**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GERALD GODWIN,
Plaintiff

CASE NO.:

-VS-

ALLIED INTERSTATE, LLC,
Defendant
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, Gerald Godwin, by and through the undersigned counsel, and sues Defendant, ALLIED INTERSTATE, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like ALLIED INTERSTATE, LLC from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner

at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analysts estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Jurisdiction for pendent state law claims is provided by 28 U.S.C. § 1367.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. §

227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

9. The alleged violations described herein occurred in Hillsborough County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Florida, residing in Plant City which is located in Hillsborough County, Florida.

11. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8) and 15 U.S.C. § 1692(a)(3).

12. Plaintiff is an "alleged debtor."

13. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

14. Defendant, ALLIED INTERSTATE, LLC, is a corporation which was formed in Minnesota with its principal place of business located at 12755 HWY 55, Suite 300, Plymouth, Minnesota 55411 and which conducts business in the State of Florida through its registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

15. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

16. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6) and U.S.C. § 1692(a)(5).

17. ALLIED INTERSTATE, LLC called Plaintiff on Plaintiff's cellular telephone approximately three hundred (300) times in an attempt to collect a debt.

18. ALLIED INTERSTATE, LLC attempted to collect an alleged debt from the Plaintiff by this campaign of telephone calls.

19. ALLIED INTERSTATE, LLC intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20. Some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received from ALLIED INTERSTATE, LLC and because he heard a pause when he answered his phone before a voice came on the line.

21. Plaintiff believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

22. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (352) ***-7073, and was the called party and recipient of Defendant's calls.

23. ALLIED INTERSTATE, LLC placed an exorbitant number of automated calls to Plaintiff's cellular telephone (352) ***-7073 in an attempt to collect on an alleged debt from Defendant's number (including but not limited to): 866-465-3710.

24. The numbers Defendant used to place calls to Plaintiff include but are not limited to: (866) 465-3710.

25. On several occasions over the last four (4) years, Plaintiff instructed ALLIED INTERSTATE, LLC's agent(s) to stop calling his cellular telephone.

26. On or about January 31, 2019 Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

27. During the aforementioned phone call with Defendant on January 31, 2019, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

28. Furthermore, each call subsequently made by Defendant to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

29. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

30. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

31. On or about February 28, 2019 Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

32. During the aforementioned phone call with Defendant on February 28, 2019, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

33. Furthermore, each call subsequently made by Defendant to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

34. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

35. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

36. On or about March 19, 2019 Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

37. During the aforementioned phone call with Defendant on March 19, 2019, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

38. Furthermore, each call subsequently made by Defendant to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

39. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

40. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

41. On or about April 16, 2019 Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

42. During the aforementioned phone call with Defendant on April 16, 2019, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

43. Furthermore, each call subsequently made by Defendant to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

44. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

45. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express

consent the Defendant may have had to call his aforementioned cellular telephone number.

46. On or about May 20, 2019 Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

47. During the aforementioned phone call with Defendant on May 20, 2019, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

48. Furthermore, each call subsequently made by Defendant to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

49. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

50. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

51. The Plaintiff's repeated requests for the harassment to end were ignored

52. Defendant has placed approximately three hundred (300) calls to Plaintiff's aforementioned cellular telephone number. Plaintiff was not able to properly catalogue each and every call received from Defendant; thus, the exact number of calls will be established after a thorough review of Defendant's records.

53. ALLIED INTERSTATE, LLC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiff's cellular telephone in this case.

54. ALLIED INTERSTATE, LLC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or ALLIED INTERSTATE, LLC, to remove the number.

55. ALLIED INTERSTATE, LLC's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals explaining to ALLIED INTERSTATE, LLC they wish for the calls to stop.

56. ALLIED INTERSTATE, LLC has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

57. ALLIED INTERSTATE, LLC has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

58. ALLIED INTERSTATE, LLC has had numerous complaints from consumers against them across the country asking to not be called, however the Defendant continues to call the consumers.

59. ALLIED INTERSTATE, LLC's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

60. ALLIED INTERSTATE, LLC has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

61. None of ALLIED INTERSTATE, LLC's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

62. ALLIED INTERSTATE, LLC willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

63. From each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

64. From each and every call without express consent placed by ALLIED INTERSTATE, LLC to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from ALLIED INTERSTATE, LLC's call.

65. From each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls he answered, the time he spent on the call was unnecessary as he had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

66. Each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone was an injury in the form of a nuisance and

annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

67. Each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

68. Each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

69. Each and every call placed without express consent by ALLIED INTERSTATE, LLC to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

70. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
**(Violation of the TCPA)**

71. Plaintiff fully incorporates and realleges paragraphs one (1) through seventy (70) as if fully set forth herein.

72. ALLIED INTERSTATE, LLC willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified ALLIED INTERSTATE, LLC that he wished for the calls to stop.

73. ALLIED INTERSTATE, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

74. Plaintiff fully incorporates and realleges paragraphs one (1) through seventy (70) as if fully set forth herein.

75. At all times relevant to this action ALLIED INTERSTATE, LLC is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

76. ALLIED INTERSTATE, LLC has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

77. ALLIED INTERSTATE, LLC has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

78. Specifically, the calls from Defendant interrupted Plaintiff when he was working on his yard.

79. Specifically, the calls from Defendant would delay him from leaving his home when he would be on his way out.

80. Specifically, the calls from Defendant interrupted Plaintiff while he was trying to relax or engage in leisure activities.

81. Specifically, the calls from Defendant interrupted Plaintiff every day of the week, Monday through Saturday.

82. ALLIED INTERSTATE, LLC's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
**(Violation of the FDCPA)**

83. Plaintiff fully incorporates and realleges paragraphs one (1) through seventy (70) as if fully set forth herein.

84. At all times relevant to this action ALLIED INTERSTATE, LLC is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

85. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

86. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

87. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Janelle Neal*

Janelle Neal, Esq.
Florida Bar No.: 774561
Morgan & Morgan Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
JNeal@forthepeople.com;
ACaputo@forthepeople.com
*Attorney for Plaintiff*